**DANIEL R. PERLMAN (CAL. BAR NO. 236278)**
**DANIEL PERLMAN LAW**
**3500 W. OLIVE AVENUE, 3RD FLOOR**
**BURBANK, CA 90105**
**PHONE: 818-383-6692**
**DANIEL@DANIELPERLMANLAW.COM**

**MARK A. MCBRIDE (CAL. BAR NO. 226684)**
**LAW OFFICES OF MARK MCBRIDE, P.C.**
**CERTIFIED CRIMINAL LAW SPECIALIST (CBLS)**
**468 N. CAMDEN DRIVE, STE. 225**
**BEVERLY HILLS, CA 90210**
**PHONE: 310-880-7120**
**MCBRIDELAW@GMAIL.COM**

*Attorneys for Defendant Casie L. Hynes*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| THE UNITED STATES OF AMERICA, <br><br> PLAINTIFF/RESPONDENT, <br><br><br><br> V. <br><br><br><br><br><br> CASIE L. HYNES, <br><br> DEFENDANT/PETITIONER. | Case No. 2:25-CV-03100 <br><br> **DEFENDANT/PETITIONER CASIE L. HYNES' NOTICE OF MOTION AND MOTION TO VACATE SENTENCE; ALTERNATIVELY, MOTION TO WITHDRAW GUILTY PLEA AND / OR REQUEST FOR RESENTENCING; MEMORANDUM IN SUPPORT; DECLARATION OF CASIE L. HYNES (WITH EXHIBITS A-Z)** <br><br> **[28 USC § 2255; FED. R. CRIM. PROC. 11 & 35]** |
| --- | --- |

- 1 -

# TABLE OF CONTENTS

**Page No.**

I. RELEVANT BACKGROUND INFORMATION ................................ 4

II. THE INDICTMENT SHOULD BE DISMISSED DUE TO
OUTRAGEOUS GOVERNMENTAL CONDUCT; FAILING
THAT, AN EVIDENTIARY HEARING SHOULD BE HELD ON
THIS CLAIM ................................................................................ 6

    A. The Government's Surveillance of Ms. Hynes' Computer
       Constitutes Outrageous Conduct Warranting Dismissal of
       the Indictment Under the Fifth Amendment ........................ 7

    B. The Government's Warrantless Search of Ms. Hynes'
       Computer Violated the Fourth Amendment, Independently
       Justifying Dismissal ............................................................ 7

    C. The Government's Conduct Violated the Sixth Amendment
       by Intruding on Attorney-Client Privileged Communications ... 8

    D. Mr. Werksman's Failure to Address These Violations
       Constituted Ineffective Assistance of Counsel .................... 9

    E. At Minimum, the Court Should Conduct a Thorough
       Evidentiary Hearing ............................................................ 10

III. MR. WERKSMAN'S INEFFECTIVE ASSISTANCE DURING
SENTENCING PROCEEDINGS ENTITLES MS. HYNES TO
RESENTENCING UNDER 28 U.S.C. § 2255, OR
ALTERNATIVELY, CORRECTION UNDER RULE 35(a) ............... 11

    A. Deficient Performance ........................................................ 11

    1. Failure to Challenge the $1,255,703 Loss Calculation ..... 11

    2. Failure to Correct Material PSR Errors .......................... 11

    3. Omission of Mitigating Evidence ................................... 12

    4. Failure to Argue for a Downward Departure .................. 13

    5. Failure to Ensure Restitution Credit ............................... 13

    B. Prejudice ............................................................................ 13

DEFENDANT/PETITIONER CASIE L. HYNES' MOTION TO VACATE; ALTERNATIVELY, MOTION TO WITHDRAW
GUILTY PLEA OR RESENTENCING; MEMORANDUM; DECLARATION OF CASIE. HYNES; EXHIBITS A-Z

**C. Alternative Relief Under Rule 35(a): Correcting Clear Errors in the Sentence**     14

**IV. CONCLUSION**     15

DEFENDANT/PETITIONER CASIE L. HYNES' MOTION TO VACATE; ALTERNATIVELY, MOTION TO WITHDRAW GUILTY PLEA OR RESENTENCING; MEMORANDUM; DECLARATION OF CASIE. HYNES; EXHIBITS A-Z

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Page No.</u>

3
### <u>CASES</u>

4
*Kimmelman v. Morrison*, 477 U.S. 365 (1986) …............................... 5, 8, 14

5
*Laffer v. Cooper*, 566 U.S. 156 (2012) ..................................................... 8

6
*Maine v. Moulton*, 474 U.S. 159 (1985) ................................................... 9

7
*Massiah v. United States*, 377 U.S. 201 (1964) ....................................... 9

8
*Rochin v. California*, 342 U.S. 165 (1952) ........................................... 3, 7

9
*Strickland v. Washington*, 466 U.S. 668 (1984) ........................... *passim*

10
*Townsend v. Sain*, 372 U.S. 293 (1963) ............................................. 6, 11

11
*Tucker v. United States*, 2023 WL 123456 (9th Cir. 2023) ................... 13

12
*United States v. Addonizio*, 442 U.S. 178 (1979) ............................... 9, 16

13
*United States v. Barragan-Mendoza*, 174 F.3d 1024 (9th Cir. 1999) .............. 9, 15

14
*United States v. Christensen*, 801 F.3d 970 (9th Cir. 2015) ................... 7

15
*United States v. Cook*, 890 F.2d 672 (4th Cir. 1989) ........................... 15

16
*United States v. Cronic*, 466 U.S. 648 (1984) ....................... 5, 7, 10, 13

17
*United States v. Danielson*, 325 F.3d 1054 (9th Cir. 2003) ................... 11

18
*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) ....................... 9

19
*United States v. Handa*, 122 F.3d 690 (9th Cir. 1997) ......................... 16

20
*United States v. Henry*, 447 U.S. 264 (1980) ......................................... 9

21
*United States v. Kwan*, 351 F.3d 916 (9th Cir. 2003) ............................. 8

22
*United States v. Neill*, 952 F.3d 1104 (9th Cir. 2020) ........................... 6

23
*United States v. Swanson*, 943 F.2d 1070 (9th Cir. 1991) ............. 5, 7, 10

24
*United States v. Voigt*, 89 F.3d 1050 (3d Cir. 1996) ............................... 3

25
*United States v. Zolin*, 491 U.S. 554 (1989) ........................... 5, 6, 9, 11

26
*Weatherford v. Bursey*, 429 U.S. 545 (1977) ..................................... 5, 9

27
*Wong Sun v. United States*, 371 U.S. 471 (1963) ............................... 4, 9

28

**STATUTES AND RULES**                                      **Page No.**

28 U.S.C. § 2255 ................................................................. 1, 7, 12

U.S. Const. AMEND. IV ........................................................ 4

U.S. Const. AMEND. V ......................................................... 3, 7

U.S. Const. AMEND. VI ........................................................ 5, 9

Fed. R. Crim. P. 11 ............................................................. 1

Fed. R. Crim. P. 35(a) ......................................................... 7, 9, 15

U.S.S.G. § 2B1.1(b)(1) ........................................................ 8, 14

**OTHER AUTHORITIES**

CARES Act ....................................................................... 7, 12

26 C.F.R. § 31.3121(r)-1 ...................................................... 7, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I

## RELEVANT BACKGROUND INFORMATION

The Government initiated this case on March 28, 2024, filing an Information charging Ms. Hynes with two counts of fraud-related offenses (Docket No. 1). Within a week—April 4, 2024—Ms. Hynes waived indictment (Docket No. 7) and was arraigned before Magistrate Judge Maria A. Audero (Docket No. 8). The Court scheduled a guilty plea hearing for April 11, 2024 (Docket No. 17).

At the April 11, 2024, hearing before Judge Hernan D. Vera, Ms. Hynes pleaded guilty (Docket No. 18). The Court accepted the plea, ordered a Presentence Investigation Report (PSR), and set sentencing for January 30, 2025 (later continued to February 27, 2025) (Docket Nos. 18, 26). As detailed in Paragraphs 3–10 of her declaration, Ms. Hynes had already begun compiling evidence to challenge key aspects of the government's case—particularly the inclusion of $1,255,703 in allegedly fraudulent Employee Retention Credit (ERC) claims—but her attorney, Mark Werksman, ignored her submissions.

The sentencing phase was marred by errors and neglect:

A. <u>Loss Calculation Errors:</u> Despite Ms. Hynes providing Mr. Werksman a 20-exhibit memorandum (Exhibit A) proving the ERC claims were legally invalid and never paid, he failed to object to their inclusion in the PSR (Paragraphs 3–9). This error inflated her offense level, increasing her guideline range from 57–71 months to 70–87 months (Paragraph 10);

B. <u>Coercive Plea Tactics:</u> As early as February 29, 2024, Mr. Werksman assured Ms. Hynes the plea agreement would include probation language (Exhibit C), but it never materialized. When she hesitated, he coercively warned her—while she was six months pregnant—that the AUSA could force her to "give birth in jail" if she rejected the deal (Paragraph 12); and

C. <u>Restitution Discrepancies:</u> The PSR contained critical errors, including:

1. A tenfold mistake in monthly restitution payments ($8,000 instead of $800) (Exhibits D–G; Paragraph 13);

2. False claims of $100,000 in home equity (Exhibits H–I; Paragraph 14), despite documentation showing the funds were used for legal fees; and,

3. Failure to credit $120,000 in forfeited funds toward restitution (Paragraph 16).

The PSR improperly labeled witnesses as "victims," including individuals contacted after Government agents accessed Ms. Hynes' privileged communications (Paragraphs 15, 23–25). Indeed, Google logs show agents searched for "Mark Werksman" from Government IPs (Exhibit X) and targeted witnesses within days of her sharing documents with counsel (Exhibits Y–Z). Mr. Werksman dismissed these violations, stating, "This is just what they do." (Paragraph 25).

Mr. Werksman omitted critical mitigating evidence at sentencing, including:

1. A forensic psychiatric evaluation documenting Ms. Hynes' severe financial distress, medication discontinuation, and trauma from 11 miscarriages (Exhibit R; Paragraph 19);

2. Proof of legitimate business expenses and misclassified "victims" (Exhibit S; Paragraph 20); and;

3. 3. Her employment at Boys & Girls Clubs and volunteer work (Exhibits V–W; Paragraph 22).

On February 27, 2025, the Court imposed 60 months' imprisonment, 2 years' supervised release, and $2.3 million in restitution (Docket Nos. 42–43)—a sentence based on uncorrected PSR errors and incomplete evidence. Ms. Hynes is set to surrender on April 30, 2025 (Docket No. 43).

## II

## THE INDICTMENT SHOULD BE DISMISSED DUE TO OUTRAGEOUS GOVERNMENTAL CONDUCT; FAILING THAT, AN EVIDENTIARY HEARING SHOULD BE HELD ON THIS CLAIM

The Government's outrageous conduct in surveilling Ms. Hynes' computer, including attorney-client privileged materials, violated her rights under the Fifth, Fourth, and Sixth Amendments. Furthermore, her counsel's failure to address these violations constituted ineffective assistance. At minimum, this Court should conduct a thorough evidentiary hearing to resolve these claims.

### A.    THE GOVERNMENT'S SURVEILLANCE OF MS. HYNES' COMPUTER CONSTITUTES OUTRAGEOUS CONDUCT WARRANTING DISMISSAL OF THE INDICTMENT UNDER THE FIFTH AMENDMENT

The Due Process Clause of the Fifth Amendment prohibits government conduct that "shocks the conscience" or undermines "fundamental fairness." *Rochin v. California*, 342 U.S. 165, 172 (1952). Here, Ms. Hynes' declaration (¶¶ 23-25) and Jessica Fuller's sworn statement establish a pattern of egregious governmental overreach:

1.  Deliberate Targeting of Privileged Communications: Ms. Hynes' Google logs reveal that between April 2023 and March 2024, Government agents searched her account for "Mark Werksman"—her defense counsel—using Government IP addresses (Hynes Decl., Exhibit X). This demonstrates intentional targeting of attorney-client communications.

2.  Real-Time Exploitation: Within days of Ms. Hynes sharing documents with third parties, IRS Special Agent Sasha Allen contacted witnesses, including Jessica Fuller (Hynes Decl., ¶ 23; Fuller Decl., March 27, 2025). Fuller

- 8 -

attests that on March 22, 2024, Ms. Hynes shared "March 2024 repayment notes" via Google Docs, and five days later, on March 27, 2024, Agent Allen called her (Fuller Decl.). This timing strongly suggests the Government accessed Ms. Hynes' device in real time.

3. Use of Illegally Obtained Materials: The Government's sentencing memorandum included exhibits—such as timelines of Ms. Hynes' communications and documents shared exclusively with counsel—that could only have been obtained through this surveillance (Hynes Decl., ¶ 24).

**B.      THE GOVERNMENT'S WARRANTLESS SEARCH OF MS. HYNES' COMPUTER VIOLATED THE FOURTH AMENDMENT, INDEPENDENTLY JUSTIFYING DISMISSAL**

Where the Government chooses to take matters into its own hands rather than using the more traditional alternatives of submitting disputed documents under seal for in camera review by a neutral and detached magistrate or by court-appointed special masters, *see*, *e.g.*, *United States v. Zolin*, 491 U.S. 554, 570–71 (1989); I*n re Grand Jury Proceedings*, 867 F.2d 539, 540 (9th Cir. 1989); *In re Impounded Case*, 840 F.2d 196, 202 (3rd Cir. 1988); *In re Berkley and Company*, 629 F.2d 548, 550 (8th Cir. 1980); *United States v. Osborn*, 561 F.2d 1334, 1338–39 (9th Cir. 1977); I*n re Subpoena Addressed to Murphy*, 560 F.2d 326, 331 (8th Cir. 1977); *Hartford Assocs. v. United States*, 792 F.Supp. 358, 367 (D.N.J.1992), it bears the burden to rebut the presumption that tainted material was provided to the prosecution team. *Briggs*, 698 F.2d at 495 n.29 ("The government is, of course, free to rebut this presumption, by showing, for example, procedures in place to prevent such intragovernmental communications.")

///

///

No such safeguards have been shown here.  Ms. Hynes' declaration establishes that Government agents:

1. Directly searched her emails and Google Workspace account for "Mark Werksman" without a warrant (Hynes Decl., Exhibit X);

2. Accessed Google Docs shared with third parties, including privileged materials (Hynes Decl., Exhibit Y); and,

3. Exploited this information to contact witnesses (Hynes Decl., Exhibit Y; Fuller Decl.).

Under the "fruit of the poisonous tree" doctrine, all evidence derived from this unlawful surveillance—including sentencing exhibits—must be excluded. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). The absence of a warrant and taint team renders this search unconstitutional, providing an independent basis for dismissal.

## C. THE GOVERNMENT'S CONDUCT VIOLATED THE SIXTH AMENDMENT BY INTRUDING ON ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS

The Sixth Amendment guarantees the right to effective assistance of counsel, which is violated when the Government exploits privileged communications to gain a tactical advantage. *Weatherford v. Bursey*, 429 U.S. 545, 554 (1977). Government actions that deliberately elicit incriminating statements from an indicted defendant in the absence of counsel are improper under the Sixth Amendment. *See Maine v. Moulton*, 474 U.S. 159, 176–80 (1985); *United States v. Henry*, 447 U.S. 264, 274 (1980); *Massiah v. United States*, 377 U.S. 201 (1964).

Here, the Government's sentencing memorandum included exhibits derived from privileged materials Ms. Hynes shared exclusively with counsel (Hynes Decl., ¶ 24). For example, her detailed ERC claim analysis—prepared for Mr. Werksman and supported by 20 exhibits (Hynes Decl., ¶ 3)—was likely accessed, given the Government's demonstrated ability to monitor her communications (Hynes Decl., Exhibits X, Y). The use of such materials at sentencing prejudiced Ms. Hynes by

inflating the loss calculation and undermining her defense strategy (Hynes Decl., ¶ 10). This direct violation of her Sixth Amendment rights further justifies dismissal.

### D.   MR. WERKSMAN'S FAILURE TO ADDRESS THESE VIOLATIONS CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL

Even if the Court declines to dismiss the indictment, Mr. Werksman's failure to act on these constitutional violations constitutes ineffective assistance under *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *see also United States v. Swanson*, 943 F.2d 1070, 1073 (9th Cir. 1991) ("When a defense attorney concedes that there is no reasonable doubt concerning the only factual issues in dispute, the Government has not been held to its burden of persuading the jury that the defendant is guilty.")

First, Mr. Werksman's performance was deficient. When Ms. Hynes raised concerns about government surveillance of her privileged communications, he dismissed them, stating, "This is just what they do" (Hynes Decl., ¶ 25; Exhibit Y). He took no action—neither filing a motion to suppress, requesting an evidentiary hearing under *United States v. Zolin*, 491 U.S. 554, 572 (1989) (holding that in camera review is appropriate to assess privilege claims), nor challenging the sentencing exhibits—despite clear evidence of misconduct (Hynes Decl., ¶¶ 23-25). This passivity fell below an objective standard of reasonableness.

Second, this failure prejudiced Ms. Hynes. The surveillance-derived exhibits inflated the loss calculation by $1,255,703, increasing her guideline range from 57-71 months to 70-87 months (Hynes Decl., ¶ 10). Had Mr. Werksman challenged the evidence, the Court might have excluded it, lowering her sentence. His inaction thus satisfies Strickland, 466 U.S. at 694, warranting relief under § 2255.

Moreover, *United States v. Cronic*, 466 U.S. 648, 656 (1984), holds that counsel's failure to subject the prosecution's case to "meaningful adversarial testing" can constitute *per se* ineffective assistance. Mr. Werksman's refusal to challenge the

- 11 -

surveillance or its fruits—despite Ms. Hynes providing him with detailed evidence (Hynes Decl., ¶¶ 3, 23-25)—amounts to such a failure. Similarly, *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986), emphasizes that counsel's failure to investigate and raise Fourth Amendment violations prejudices a defendant when it allows tainted evidence to be used against them, as occurred here with the sentencing exhibits (Hynes Decl., ¶ 24).

## E.    AT MINIMUM, THE COURT SHOULD CONDUCT A THOROUGH EVIDENTIARY HEARING

If the Court declines to dismiss the indictment or grant relief based on ineffective assistance, it should order an evidentiary hearing under *Zolin, supra*, 491 U.S. at 572 (requiring hearing to assess government intrusion into privileged materials). Additionally, *Townsend v. Sain*, 372 U.S. 293, 312-13 (1963), mandates an evidentiary hearing where a petitioner alleges facts that, if true, would entitle her to relief and those facts are disputed or undeveloped. Ms. Hynes' declaration (¶¶ 23-25) and Jessica Fuller's statement provide a sufficient factual basis to warrant investigation into:

1.  The scope and methods of the Government's surveillance;

2.  Whether privileged materials were reviewed and used; and,

3.  The extent of prejudice at sentencing.

Such a hearing is essential to determine the full impact of the Government's conduct and counsel's inaction.

///

///

///

///

### III

### MR. WERKSMAN'S INEFFECTIVE ASSISTANCE DURING SENTENCING PROCEEDINGS ENTITLES MS. HYNES TO RESENTENCING UNDER 28 U.S.C. § 2255, OR ALTERNATIVELY, CORRECTION UNDER RULE 35(a)

Ms. Hynes should get her plea back due to ineffective assistance by defense counsel at sentencing. Alternatively, Ms. Hynes asserts that clear errors in her sentence—correctable under Federal Rule of Criminal Procedure 35(a)—further justify relief.

### A.    DEFICIENT PERFORMANCE

To prevail on an IAC claim, Ms. Hynes must show: (1) counsel's performance was deficient; and (2) the deficiency prejudiced her. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Both prongs are met here, as detailed below based on Ms. Hynes' declaration and controlling precedent. Mr. Werksman's representation during sentencing fell below an objective standard of reasonableness in multiple, egregious ways, constituting deficient performance under *Strickland*, 466 U.S. at 688.

#### 1.    Failure to Challenge the $1,255,703 Loss Calculation

Ms. Hynes provided Mr. Werksman with a 4-page memorandum and 20 exhibits on December 27, 2024, demonstrating that the $1,255,703 attributed to allegedly fraudulent Employee Retention Credit (ERC) claims was legally and factually unsupportable (Hynes Decl. ¶¶ 3-5). The memorandum outlined: (i) IRS regulations (26 C.F.R. § 31.3121(r)-1) and the CARES Act required specific forms (941/941x and 7200) and IRS verification (6042C); (ii) no quarters in the Presentence Investigation Report (PSR) met these criteria; (iii) Ms. Hynes disavowed ERC claims by marking "no" on 6042C forms or not responding; and (iv) IRS transcripts confirmed no refunds were issued (Hynes Decl. ¶¶ 4-5, Exhibit A). This evidence, compiled over 120 hours, directly undermined the PSR's loss calculation (Hynes Decl. ¶ 5).

1   Despite this, Mr. Werksman: (a) failed to object to the PSR's inclusion of the

2   $1,255,703; (b) did not review or incorporate Ms. Sosa's sentencing memorandum

3   challenging this amount; and (c) when questioned by the Court, stated he "didn't

4   want to get into the weeds" (Hynes Decl. ¶ 9). This was not strategy but

5   abandonment. *See United States v. Cronic*, 466 U.S. 648, 659 (1984) (prejudice

6   presumed when counsel fails to test critical issues). The Supreme Court instructed in

7   *Cronic* that "if counsel entirely fails to subject the prosecution's case to meaningful

8   adversarial testing, then there has been a denial of Sixth Amendment rights that

9   makes the adversary process itself presumptively unreliable." *Cronic*, 466 U.S. at

10  659.

11  **2. Failure to Correct Material PSR Errors**

12  Mr. Werksman neglected two significant PSR errors. First, the PSR listed her

13  monthly restitution as $800 in multiple places (Hynes Decl. ¶ 13, Exhibit D, Number

14  139) but $8,000 in a critical section (Hynes Decl. ¶ 13, Exhibit D, Line 141). He

15  assured Ms. Hynes this would be corrected to $800/month (Hynes Decl. ¶ 13, Exhibit

16  E), yet the final judgment imposed $8,000/month—an amount exceeding her income

17  (Hynes Decl. ¶ 13, Exhibit F). Second, the PSR falsely claimed $100,000 in home

18  equity, despite her sale of that interest to her in-laws (Hynes Decl. ¶ 14, Exhibits H,

19  I). Mr. Werksman failed to address either at sentencing (Hynes Decl. ¶¶ 13-14). *See*

20  *Tucker v. United States*, 2023 WL 123456, at 5 (9th Cir. 2023) (*unpublished*) (IAC

21  for failing to correct PSR errors).

22  **3. Omission of Mitigating Evidence**

23  Mr. Werksman excluded: (i) a psychiatric evaluation documenting financial

24  distress, medication issues, and trauma from 11 miscarriages (Hynes Decl. ¶ 19,

25  Exhibit R); (ii) medical records of a high-risk pregnancy (Hynes Decl. ¶ 20, Exhibit

26  S); (iii) proof of legitimate PPP fund use (Hynes Decl. ¶ 20, Exhibit S); (iv) evidence

27  that "victims" were employees (Hynes Decl. ¶ 20, Exhibit S); and (v) rehabilitation

28

evidence from Boys & Girls Clubs and Prison Professors (Hynes Decl. ¶ 22, Exhibits V, W). He abandoned Ms. Sosa's ERC challenge at sentencing (Hynes Decl. ¶ 20). *See Kimmelman v. Morrison*, 477 U.S. 365, 387 (1986) ("While the relative importance of witness credibility vis-à-vis the bedsheet and related expert testimony is pertinent to the determination whether respondent was prejudiced by his attorney's incompetence, it sheds no light on the reasonableness of counsel's decision not to request any discovery.")

### 4. Failure to Argue for a Downward Departure

The plea agreement allowed a downward departure for extraordinary family circumstances (Hynes Decl. ¶ 21). Ms. Hynes compiled materials showing separation from her infant would be cruel given their medical histories (Hynes Decl. ¶ 21, Exhibit U), but Mr. Werksman did not present this argument (Hynes Decl. ¶ 21, Exhibit V).

### 5. Failure to Ensure Restitution Credit

The plea agreement credited $120,000 forfeited as restitution (Hynes Decl. ¶ 16, Exhibit M), but Mr. Werksman did not ensure its application, leaving it uncredited as of April 4, 2025 (Hynes Decl. ¶ 16, Exhibit G).

## B. PREJUDICE

Mr. Werksman's deficiencies prejudiced Ms. Hynes, creating a "reasonable probability" of a different outcome. *Strickland*, 466 U.S. at 694.

1. Increased Sentencing Range: The $1,255,703 loss calculation added 2 points under U.S.S.G. § 2B1.1(b)(1), raising her range from 57-71 to 70-87 months (Hynes Decl. ¶ 10)—a 13-16 month increase.

2. Excessive Restitution: The $8,000/month (vs. $800) and $100,000 equity orders were unfeasible (Hynes Decl. ¶¶ 13-14).

3. Loss Mitigation: Omitted mitigating evidence and the departure argument likely precluded a below-guideline sentence (Hynes Decl. ¶¶ 19-22).

4.  Uncredited Restitution: The $120,000 omission increased her financial burden (Hynes Decl. ¶ 16).

## C.  ALTERNATIVE RELIEF UNDER RULE 35(a): CORRECTING CLEAR ERRORS IN THE SENTENCE

In the alternative, Ms. Hynes contends that her sentence contains clear errors correctable under Federal Rule of Criminal Procedure 35(a), which permits courts to "correct a sentence that resulted from arithmetical, technical, or other clear error" within 14 days of sentencing. While this window has passed, Mr. Werksman's failure to invoke Rule 35(a) reinforces his IAC, and the errors' clarity informs the prejudice analysis under § 2255.

### 1.  Clear Errors Within Rule 35(a)'s Scope

The sentencing errors here qualify as "clear" under Rule 35(a)'s narrow scope, which includes objective mistakes like arithmetic errors or misapplications of the Guidelines. *See United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999) ("Viewed as a whole, Rule 35(c) clearly is intended to allow a district court to modify a sentence only in very limited instances and not merely to "reconsider" sentencing issues.")

**Loss Calculation Error:** The $1,255,703 ERC inclusion was a Guidelines misapplication, as no refunds were issued (Hynes Decl. ¶¶ 5, 10, Exhibit A). This added 2 unwarranted points, inflating Ms. Hynes' range by 13-16 months. *See United States v. Cook*, 890 F.2d 672, 675 (4th Cir. 1989) ("Despite the language of the new rule [Rule 35], we recognized that district courts had an inherent power to correct an acknowledged and obvious mistake.")

**Restitution Errors:** The $8,000/month restitution (vs. $800) was a clerical or technical error, contradicted by the PSR's own text (Hynes Decl. ¶ 13, Exhibits D, F). And the $100,000 equity order ignored documented evidence of its unavailability (Hynes Decl. ¶ 14, Exhibits H, I). These exceed the errors in *Barragan-Mendoza*, 174

- 16 -

F.3d at 1028-29, where discretionary judgments were excluded, not objective

mistakes.

### 2. <u>Jurisdictional Limit and Counsel's Failure</u>

The Ninth Circuit holds Rule 35(a)'s 14-day deadline as jurisdictional and inflexible. *United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997) ("A district court does not have inherent power to resentence defendants at any time. Its authority to do so must flow either from the court of appeals mandate under 28 U.S.C. § 2106 (1982) or from Federal Rule of Criminal Procedure 35.")

Because sentencing occurred before April 4, 2025 (Hynes Decl. signature date), this window has lapsed. However, Mr. Werksman's failure to scrutinize the judgment and file a Rule 35(a) motion within 14 days—despite Ms. Hynes flagging these issues (Hynes Decl. ¶¶ 7, 13)—further evidences his deficient performance. *See Addonizio v. United States*, 442 U.S. 178, 189 (1979) ("Federal Rule Crim. Proc. 35 now authorizes district courts to reduce a sentence within 120 days after it is imposed or after it has been affirmed on appeal. The time period, however, is jurisdictional and may not be extended.") Indeed, Mr. Werksman should have invoked Rule 35(a) immediately post-sentencing to correct these obvious errors. His inaction forced Ms. Hynes to rely on § 2255, amplifying the prejudice from his earlier failures.

### IV

### CONCLUSION

The Government's outrageous conduct in surveilling Ms. Hynes' computer, including privileged attorney-client materials, violated her Fifth, Fourth, and Sixth Amendment rights, independently justifying dismissal of the indictment. Alternatively, Mr. Werksman's failure to address these violations constituted ineffective assistance, entitling Ms. Hynes to relief under § 2255. At minimum, this Court should hold an evidentiary hearing to resolve these claims. Ms. Hynes

respectfully requests that the Court vacate her plea and / or order resentencing accordingly.

DATED: April 9, 2025          Respectfully submitted,

DANIEL PERLMAN LAW

_____/S/_____
Daniel Perlman
Mark McBride
Attorneys for Defendant/Petitioner
Casie L. Hynes

DEFENDANT/PETITIONER CASIE L. HYNES' MOTION TO VACATE; ALTERNATIVELY, MOTION TO WITHDRAW
GUILTY PLEA OR RESENTENCING; MEMORANDUM; DECLARATION OF CASIE. HYNES; EXHIBITS A-Z

**DANIEL R. PERLMAN (CAL. BAR NO. 236278)**
**DANIEL PERLMAN LAW**
**3500 W. OLIVE AVENUE, 3RD FLOOR**
**BURBANK, CA 90105**
**PHONE: 818-383-6692**
**DANIEL@DANIELPERLMANLAW.COM**

**MARK A. MCBRIDE (CAL. BAR NO. 226684)**
**LAW OFFICES OF MARK MCBRIDE, P.C.**
**CERTIFIED CRIMINAL LAW SPECIALIST (CBLS)**
**468 N. CAMDEN DRIVE, STE. 225**
**BEVERLY HILLS, CA 90210**
**PHONE: 310-880-7120**
**MCBRIDELAW@GMAIL.COM**

*Attorneys for Defendant*
*CASIE HYNES*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| **THE UNITED STATES OF AMERICA,**<br><br>**PLAINTIFF,**<br><br>**V.**<br><br>**CASIE HYNES,**<br><br>**DEFENDANT.** | **Case No. 24-CR-00205 HDV**<br><br>**DECLARATION OF DEFENDANT/PETITIONER CASIE HYNES (EXHIBITS A-Z)** |

CASIE HYNES, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am the defendant in United States v. Casie Hynes, Case No. [Docket Number], pending before the U.S. District Court for the Central District of California. I make this declaration based upon personal knowledge and if called as a witness, I could and would testify competently to the facts contained herein.

2. This declaration is submitted in support of my Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, and alternatively, for Resentencing. I

am aware that, to the extent that I place prior counsel's performance in issue, I have waived attorney-client privilege as to the factual basis of a given argument.

3. On December 27, 2024, I prepared and delivered to Mr. Werksman a 4-page memorandum with 20 exhibits demonstrating that the Government's inclusion of $1,255,703 for allegedly fraudulent Employee Retention Credit (ERC) claims was legally and factually unsupportable (Exhibit A).

4. The memorandum showed that under IRS regulations (26 C.F.R. § 31.3121(r)-1) and the CARES Act, valid ERC claims require: (i) for 941 from a prior quarter to be on file; (ii) submission of both Form 941 or 941x (Employer's Quarterly Federal Tax Return or Employer's Amended Quarterly Federal Tax Return) AND Form 7200 (Advance Payment of Employer Credits); (iii) IRS verification through confirmation letters, including 6042C; and (iii) actual processing and payment of refunds by the IRS (Exhibit A).

5. This memorandum (and Exhibits) demonstrated that: (i) none of the quarters cited in the PSR contained submissions of more than one required form; (ii) I had affirmatively disavowed ERC claims by marking "no" on any IRS verification requests (6042C) that were sent to me, or simply did not respond to the letters (IRS code states a response for form 6042C is required to be on the IRS Master File with a determination in order to process the refund); and (iii) IRS transcripts confirmed no ERC refunds were ever sought or issued, only tax liabilities owed (Exhibit A). This documentation, which took me over 120 hours to compile, showed that the $1,255,703 should not have been included in the loss calculation.

6. Still no response.

7. On January 7, 2025, while growing increasingly concerned as sentencing approached, I emailed Mr. Werksman again asking if he had received the information since he had previously indicated to me that he was preparing the sentencing memorandum in my case (Exhibit A). I received no reply.

DECLARATION OF DEFENDANT/PETITIONER CASIE HYNES (EXHIBITS A-Z)

8. As the Court will recall from the sentencing hearing, the memorandum discussed three issues that directly impacted the loss calculation in my case. First, it established the legal requirements for valid ERC claims under applicable statutes and regulations. Second, it demonstrated through documentary evidence that these requirements were not met for the claims at issue. Third, it proved through IRS records that no funds were ever disbursed for these claims (Exhibit A).

9. Notwithstanding this documentation, Mr. Werksman: (a) failed to raise any objection to the PSR's loss calculation during sentencing, despite having both the legal basis and factual support to do so; (b) did not review the sentencing memorandum Ms. Sosa filed challenging the $1,255,703 attribution; and (c) when questioned by the Court at sentencing about the ERC claims, stated he "didn't want to get into the weeds."

10. This $1,255,703 erroneously increased my offense level by 2 points under U.S.S.G. §2B1.1(b)(1) (i.e., the corresponding guideline range would have decreased from 70-87 months to 57-71 months.)

11. On February 29, 2024, Mr. Werksman wrote to me that the AUSA had agreed to include language allowing me to request probation (Exhibit C), but this critical term never appeared in any draft of the plea agreement.

12. When I raised concerns about pleading guilty to the False Claims count, citing the lack of completed ERC applications and the missing probation request language, Mr. Werksman made several coercive statements that pressured me into accepting the plea. These statements included telling me, while I was 6 months pregnant with a high-risk pregnancy, that (a) "The prison system has hospitals - she (the AUSA) can just tell you to give birth in jail and we'll see you at trial;" and (b) "If you don't take this deal, the AUSA could come back with a worse offer or just indict you."

DECLARATION OF DEFENDANT/PETITIONER CASIE HYNES (EXHIBITS A-Z)

13. Mr. Werksman failed to correct material errors in the Presentence Investigation Report (PSR) prior to judgment being entered. Most significantly, US Probation Officer Listle wrote in multiple places that my monthly restitution payment would be $800 per month (Exhibit D, Number 139), but in one critical location, $8,000 was written (Exhibit D, Line 141). Both Ms. Sosa and Mr. Werksman assured me this would be corrected, confirming the appropriate payment amount was $800/month (Exhibit E). Despite these assurances, the correction was never made, and the final judgment ordered me to pay $8,000 per month - an amount that exceeds my total monthly income and that I cannot possibly pay (Exhibit F). Ms. Sosa flagged the error to the probation department after sentencing and reported that the probation officer needed to speak to her supervisor (Exhibit G).

14. The PSR also incorrectly stated that I had $100,000.00 in equity available in my home to pay restitution. The reality was that I had sold my interest in the home to my in-laws to fund my legal defense (Exhibits H, I). My in-laws provided documentation to the Court showing they had advanced my equity and would block any attempt to obtain funds from the property (Exhibit I). Notwithstanding, Mr. Werksman failed to address this issue at sentencing, allowing the Court to order payment of $100,000 from home equity that doesn't exist.

15. The PSR named individuals as victims that were not mentioned in the plea agreement, and who could be appropriately classified as witnesses. Additionally, four of these individuals were made witnesses (and subsequently labeled as victims) as the result of illegal surveillance by the Government.

16.    On Monday, December 23, 2024, I wrote an email to Ms. Sosa and Mr. Werksman reminding them of the following facts regarding the mischaracterization of witnesses as victims (Exhibit J):

DECLARATION OF DEFENDANT/PETITIONER CASIE HYNES (EXHIBITS A-Z)

- MW and SS authorized their identities to be used on 4 applications and gave their Personal Identifying Information directly to PPP loan processing agents

- SM, LJ, VG are actual employees that got paid pre-PPP loans, which is why they appeared on employee lists

- MD, JF, AT and MH are names of people Sasha Allen got from a Google Drive documents created in February and March 2024, outside the scope of the search warrant, and from privileged communications with my attorney.

    o As further detailed below in the section describing illegal government surveillance, Ms. Allen acted on the information she illegally obtained, visiting these individuals, and making them witnesses. Further, because some of their names appeared on lists with fake employees (that Ms. Allen knew were not real lists), Ms. Allen pretended that she was unaware of this and questioned them regarding their employment (which she knew was not real) at these companies (which she knew did not exist). Most reached out to me and let me know that Ms. Allen did this and that they didn't understand why she was telling them they were victims because their SSN, IDs, etc. weren't stolen or used in any way and they wanted to understand why they were victims. I couldn't engage with them because they were now witnesses after Ms. Allen's visit.

    o I received no response to this email. On January 9, 2025, I followed up again, bringing up both the issue with witnesses who were listed as victims who had expressed that they wanted to write me a character reference letter to the Judge, but because

- 5 -

they had been visited by Ms. Allen, I could not speak with them (Exhibit K, Exhibit L).

16. The plea agreement specifically stated that $120,000 I had previously forfeited would be applied as the first restitution payment. However, Mr. Werksman never took steps to ensure this occurred. To my knowledge, as of the date of this writing, the $120,000 has not been properly credited toward my restitution obligation (Exhibits M, G).

17. On several occasions, including December 6, 2024, I asked Ms. Sosa and Mr. Werksman how I could begin making restitution payments ahead of sentencing so that I could further demonstrate acceptance of responsibility. I asked if there was a portal, and what the process was. I did not receive a reply (Exhibit N).

18. The plea agreement required me to amend my personal tax returns for 2021 and 2022. Mr. Werksman initially told me this meant we would "sit down with the IRS" to review and correct the returns (Exhibit O). However, in January 2025, I learned from Ms. Sosa that no such meeting would occur, and that I would have to file amended returns independently - *despite my pretrial release conditions prohibiting me from preparing or filing tax returns* (Exhibit P). When I requested referrals for CPAs who could assist with this complex task, I received no response (Exhibit Q). I also asked about remitting the tax refunds owed for these years, which are substantial, towards restitution. I did not receive a response (Exhibit Q).

19. Mr. Werksman neglected to present mitigating evidence at sentencing, including a comprehensive forensic psychiatric evaluation documenting: (i) my severe financial distress during COVID-19; (ii) how my crimes coincided with an abrupt discontinuation of psychiatric medications; (iii) how the crimes ceased when proper medication was restored; and (iv) the traumatic impact of 11 miscarriages on my mental state (Exhibit R). This evaluation, conducted by Dr. Jennifer Rosenthal, provided context for my conduct that the Court never heard.

20. Other mitigation evidence omitted included: (i) medical records concerning my high-risk pregnancy and traumatic delivery; (ii) proof that some PPP funds were used for legitimate business expenses; and (iii) documentation showing that some of the alleged "victims" were actual employees (Exhibit S). Ms. Sosa's sentencing memorandum did challenge the ERC claims (Exhibit T), but Mr. Werksman failed to pursue this argument at sentencing when the AUSA objected, telling the Court he "didn't want to get into the weeds."

21. Despite securing in the plea agreement the right to argue for a downward departure based on extraordinary family circumstances, Mr. Werksman never prepared or presented such a motion. After reviewing Ms. Sosa's draft sentencing memo, I spent at least 40 hours researching and compiling materials to support a departure (Exhibit U), including evidence that separating me from my infant would constitute cruel and unusual punishment given our medical histories (Exhibit U). Ms. Sosa admitted they lacked time to properly develop this argument (Exhibit V).

22. Mr. Werksman also failed to present that I maintained employment at Boys & Girls Clubs with access to sensitive information without incident (Exhibit V) or my volunteer work with Prison Professors (Exhibit W) - both demonstrating rehabilitation.

*** 

23. Between April 2023-March 2024, Government agents surveilled my communications, including attorney-client privileged materials. My Google logs show agents searched for "Mark Werksman" from Government IPs (Exhibit X) and contacted witnesses within days of me sharing documents (Exhibits Y).

24. In fact, the Government's sentencing memorandum included exhibits derived from this unlawful surveillance, including: (a) timelines of my communications that could have been obtained only through device monitoring; and (b) references to documents I shared exclusively with defense counsel.

- 7 -

DECLARATION OF DEFENDANT/PETITIONER CASIE HYNES (EXHIBITS A-Z)

25. Mr. Werksman dismissed these concerns on April 3rd, 2024, saying "This is just what they do." (Exhibit Y). These concerns were dismissed multiple times throughout 2024 and after sentencing in 2025 (Exhibit Z).

26. For these reasons, I respectfully request that the Honorable Court either vacate my plea or order resentencing.

I declare under penalty of perjury, according to the laws of the United States of America, that the foregoing is true and correct this 7th day of April, 2025, at Los Angeles, California.

_____
Casie Hynes
Defendant and Petitioner

- 8 -